OPINION
 

 By the Court,
 

 Shearing, J.:
 

 Jose Flores and Carlos Escobar were charged with murder with the use of a deadly weapon in the shooting death of Francisco Cabral. Flores went to trial separately and a jury found him guilty of first degree murder with the use of a deadly weapon. Flores appeals from the judgment of conviction. He alleges that the trial court erred in admitting certain evidence, including evidence that Escobar had been previously convicted of a murder and that Flores and Escobar were affiliated with a gang.
 

 FACTS
 

 Two men approached Francisco Cabral and his fianceé, Charmaine Felix, as they walked together on a Las Vegas street at night on October 17, 1995. Felix was pushing her infant son in a baby carriage. One of the men asked Cabral, “Where are you from?” Cabral answered “L.A.” The man who had not spoken fired two shots at Cabral with a dock 9mm semi-automatic handgun. One of the bullets hit Cabral in the head; he fell to the ground and died minutes later. The two men ran away.
 

 On November 3, 1995, Felix tentatively identified Flores from a photo lineup. She said she was almost seventy-five percent sure the person in the photo was the shooter in the Cabral killing. She also stated the shooter was the taller man, even though at trial it
 
 *661
 
 was clear that Escobar was the taller of the two. She was unable to identify the other man from another photo line-up although that photo line-up included Escobar. On November 8, 1995, she assisted a police artist in preparing a drawing of the second man. In April 1997, Felix was shown another photo line-up which included a computer-enhanced photograph of Escobar. A hat and goatee, as previously described by Felix, had been added to the photograph of Escobar. This time she identified Escobar.
 

 On February 14, 1997, the police recovered the Glock 9mm handgun used in the Cabral shooting in an apparently unrelated incident. The man from whom the gun was recovered denied knowing Flores. Ballistic tests showed the handgun was the same one used in both the Cabral shooting and the killing of Daniel Arrequin on September 28, 1995, three weeks before the Cabral killing. Escobar was identified as the shooter in the Arrequin killing and, by the time of Flores’ trial, had already been convicted of the Arrequin murder. Wilfredo Sanchez had also been shot in the same incident, but survived. Sanchez testified at Flores’ trial that Escobar approached him and asked “Where are you from?” before shooting him. Sanchez testified that he understood the question to mean, “What gang are you in?” Sanchez did not answer Escobar, but at trial Sanchez admitted to being a gang member.
 

 Felix testified at trial that Cabral told her he was in a gang. Felix also identified Flores and Escobar as the two men who approached her when Cabral was killed. Other testimony established that Flores and Escobar were friends; they lived together for a time, and Flores visited Escobar several times in jail. Police Detective Fred Garcia testified that he met Flores and Escobar in his work with the police gang unit, although such contact did not necessarily imply criminal activity. Flores also gave a taped statement to the police, which the jury heard in court, in which he admitted that he had been a gang member.
 

 DISCUSSION
 

 Admissibility of prior murder
 

 Flores argues the trial court erred in admitting evidence of Escobar’s prior murder of Arrequin against him. Evidence of another crime is not admissible to prove the character of a person in order to show that he acted in conformity therewith on a particular occasion.
 
 See
 
 NRS 48.045(2). Other crimes, however, may be admissible for other purposes, such as to prove identity or motive.
 
 Id.
 
 In the district court, the State argued in a motion in limine that the murder conviction of Escobar was admissible to corroborate the identification of Escobar. This argument on the
 
 *662
 
 motion was made before the trials of Escobar and Flores were severed. The district court, in its ruling that the evidence was admissible as to Escobar, stated “[a]s to how that plays with Mr. Flores, that is a difficulty. ... So for limited purposes it can be used. Not necessarily against Mr. FLORES, because he didn’t have the gun at the earlier setting but nonetheless it’s part of the story and the jury should be entitled to hear that, for whatever it’s worth.”
 

 The State now argues that the evidence of Escobar’s murder of Arrequin is admissible under the complete story doctrine. Evidence of other bad acts may be admissible to provide necessary context under the complete story doctrine.
 
 See
 
 NRS 48.035.
 
 [1]
 
 We conclude, however, that the complete story doctrine is not implicated on the facts of this case. There is no basis for suggesting that the Arrequin killing was so interconnected with the Cabral killing that a witness could not describe the Cabral killing without referring to the Arrequin killing.
 
 See
 
 Bletcher v. State, 111 Nev. 1477, 1480, 907 P.2d 978, 980 (1995) (admitting evidence of other crime was reversible error).
 

 The State also argues the evidence of the Arrequin murder is admissible to show motive. There is no evidence in the record to support that argument. There is evidence that all the victims and both accused killers were gang members, and the same question, apparently related to gang membership, was asked in each case. Why that would provide motivation for the killing, however, is mere speculation, not evidence or a legitimate inference from the evidence.
 

 The relevant argument for admitting Escobar’s participation in the Arrequin murder into evidence against Flores is to help corroborate the identity of Flores. Linking the gun used in the Cabral killing to the gun Escobar used in the Arrequin killing and then linking Flores to Escobar does have some relevance on the issue of Flores’ identity. According to NRS 48.035(1), however, even if the evidence of Escobar’s prior bad act was relevant, the district court was still obligated to determine whether its probative value was substantially outweighed by the danger of unfair prejudice.
 
 *663
 

 See
 
 Petrocelli v. State, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985). We hold the district court abused its discretion by admitting the prior murder by Escobar in the Flores trial. The danger of unfair prejudice created by introducing a prior murder by Flores’ friend and co-defendant far outweighed the tenuous probative value on the issue of Flores’ identity. Furthermore, the fact that the same gun allegedly used by Flores was previously in the hands of his partner Escobar could have been admitted without ever referring to the prior murder.
 

 The district court did not reconsider the admissibility of Escobar’s prior bad act after Escobar’s trial was severed, despite express reservations about its admissibility as to Flores when the motion in limine was granted. No limiting instruction was given. The probative value of the evidence for permissible purposes was minimal, while the danger of unfair prejudice was substantial. It was manifest error to admit the murder by Escobar into evidence in the severed trial of Flores.
 

 Flores also argues that Detective Garcia’s testimony concerning his encounters with Flores and Escobar in the course of his work for the gang unit was improperly admitted. We disagree. Garcia’s testimony related to the identification of Flores and Escobar, and their association, through a series of photographs taken by the gang unit of the Metropolitan Police Department. Flores admitted to having been a gang member and Garcia testified that the fact that the gang unit took the photograph did not mean that a criminal act was involved. The evidence of the gang unit’s involvement was thus properly limited to identification of photographs with no other adverse inferences. Futhermore, virtually all the witnesses testified regarding gang affiliation without objection by counsel, so the fact that a gang unit might have identified the defendant is not any more prejudicial than the gang affiliation. The district court did not abuse its discretion in admitting the testimony of a gang unit officer.
 

 We have considered the other arguments on appeal and find them to be without merit. In view of the error in admitting the evidence of the murder committed by Escobar against Flores, we reverse the judgment of conviction and remand the case to the district court for further proceedings.
 

 Maupin and Becker, JJ., concur.
 

 [1]
 

 The complete story doctrine is codified in NRS 48.035(3), which provides:
 

 Evidence of another act or crime which is so closely related to an act in controversy or a crime charged that an ordinary witness cannot describe the . . . crime charged without referring to the other act or crime shall not be excluded, but at the request of an interested party, a cautionary instruction shall be given explaining the reason for its admission.